May it please the Court, J.D. Henderson for Plaintiff and Appellant Eyon Neal Christmas. I'd like to reserve five minutes for rebuttal. This appeal comes down to two issues. Are the local California defendants significant under the local controversy exception? If so, remand is required. And has the Federal Railroad Administration issued a regulation or order substantially subsuming the federal hours of service laws? If not, there's no preemption of California's hours of service laws because that's what Congress expressly instructed in the Federal Railroad Safety Act. I'll address remand first. Under the Class Action Fairness Act, federal courts must remand local controversies when there's not a complete diversity, when you have local defendants and significant relief is sought from those local defendants. This is a case about California law. Californians are on both sides of the V. Four out of the five defendants here are Californians. Union Pacific argues that those Californians aren't significant because the plaintiff would at most recover only $4,000 per violation from them, whereas Union Pacific would be subject to $5,000 per violation. $4,000 versus $5,000 is significant. Union Pacific also argues that because there may be other railroad employees at other locations, that the local defendants here don't constitute enough of the damages that are alleged here to warrant remand. But Union Pacific has not provided any such details. Well, can I ask you two questions about that? First of all, the complaint says that Union Pacific has an enormous statewide reach, operates throughout the state, and you're suing on behalf of all of the employees of Union Pacific. How is the claims against these two, these four, rather, individuals significant, either in terms of the recovery that's likely to be had or in terms of the nature of the claim? Because it's a railroad company, Your Honor, and it travels throughout the state. How many railroad freight locations it has is unknown at this point. We know of one, and that's the only one we know of, but the railroad travels throughout the state. If it was a taxi cab company in Los Angeles, I could allege that it had taxi cabs throughout the county of Los Angeles, but it might only have one location where those cabs are parked. In terms of our being bound by the complaint, in the normal case, where we're bound by the complaint on a motion to dismiss, we could take judicial notice of facts, can't we? Absolutely, Your Honor. However, no such facts have been provided. If you want to do the mathematical analysis under BINCO. No, no. My law clerk found a website maintained by the state of California, which lists something like 48, I'm not sure of the exact number, rail yards in California that Union Pacific maintains, including a map of where all of these are throughout California. I can read them to you, but is that a document that we could take judicial notice of? Well, not under Estes, not under the Ninth Circuit's ruling, you're bound by the pleadings. However, even under that map that you're discussing- I just asked you before I told you this, whether you agreed that we could take judicial notice. In terms of looking at the complaint, just as we can normally on a motion to dismiss, consider facts of which we could take judicial notice, and you said yes. Yes, you can. And why can't we? But not under sections AA and BB, which is what the Estes decision found. You can take judicial notice of citizenship, you can take judicial notice of certain things, but the Ninth Circuit has already held that you can't look to extrinsic evidence, you can't look outside the pleadings when it comes to the significant basis, AA and BB. No, no, none of those cases dealt with the issue of judicial notice. Well, that's true, but they did deal with extrinsic evidence, and that's what I believe judicial notice you're referring to. You're looking outside the pleadings. I don't understand why not. In the ordinary case, if we were looking at a motion to dismiss the complaint, we would be bound by the four corners of the complaint, plus matters as to which we could take judicial notice. And what this California website, of course, is consistent with the common sense reading of the allegations in your complaint. I would disagree with that, Your Honor. We don't know if intermodal operations take place at those 48 rail yards. I'm not aware of any other locations outside of the main freight yards that intermodal operations occur, and nor has this defendant stated such. There are different kinds of railroad locations. Some do repair, some do switching, but intermodal operations, I'm only aware at this point of one, and Union Pacific has provided no such details. And this case only concerns freight intermodal operations, MROs and ramp managers. And I'm not aware that they exist in any location other than the one that we've alleged. However, in addition to that, it's not just the mathematical analysis that would be based on inferred numbers. You can't say x plus 2 equals 5 unless you know for sure what x is. And so taking judicial notice of different railroad locations doesn't provide you enough information to do the math, and it's Union Pacific's burden. But in addition to that, California has specifically made railroad agents liable for violations of its safety, railroad safety laws. And that in itself is significant. The fact that Union Pacific is also liable, maybe for a whole bunch of other violations at other locations, doesn't mean that California... And this location as well. And this location at... And isn't it a fact, unless we ignore reality, that the judgment here is going to be paid by Union Pacific, and there is not the slightest chance that you're going to collect $5 million from these four individual employees? I think that that means that this court is being placed in the position of declaring that California doesn't have a significant interest in holding individuals liable for violations of its safety laws. I'm not saying that we can collect. I'm saying that we've alleged and sought that collection. If these individual defendants are wealthy enough, they should have to pay. They shouldn't be allowed to violate California's safety laws when California specifically said that the individual railroad agent is individually liable in addition to the liability of the company. I understand that, but we're not... We're talking about a particular statute here. Correct. And your ability to... And what court you can litigate. Correct. That's what we're talking about. And isn't it a fact that, for example, in the Coleman versus Estes case, the court said at the end of its opinion, there's nothing in the complaint to suggest that Estes West is a nominal defendant and now getting to the critical part, or that Estes West has so few assets that Coleman is not seeking significant monetary relief from it. And you're basically... You basically put in four low-level employees of Union Pacific, and the reality is that the money is going to be paid. Anything close to $5 million, which is what you're asked, and essentially we have to presume you're asking for, is not going to be paid by them. Well, I would disagree with that. Why not? If they're individually liable, they should... Well, it's one thing to be individually liable. It's another thing to have 20% of $5 million, for example. Which is what you say each of these people are going to pay, so that's a million dollars. Isn't that specifically what Coleman said shouldn't be looked at? I'm trying to read to you from Coleman. It says, there's nothing in the complaint to suggest that Estes West has so few assets that Coleman is not seeking significant monetary relief from it. And it seems to me that we would have to be sort of blind to reality to not understand what's going on here. I don't think that that's what Coleman says. Coleman specifically said... I read it to you. You could distinguish it. I read you exactly from it. Well, Coleman specifically says that you focus on what's sought, not what might be recovered, and you're using your inference that the individuals who are low-level employees, and I disagree, they had authority over the scheduling, and had they followed the law, there would be no safety violation here. And the four of them could pay $4 million of the $5 million judgment. I haven't seen their bank accounts, and I don't think that this court should decide to ignore Coleman B. Estes' statement that what's sought is important, not what's what may be recovered, because we assume that these low-level employees, who in fact aren't, they have authority over scheduling operations, can't pay a judgment when California apparently thinks they can, because California passed a statute that specifically... Can pay this kind of huge judgment, which you're really seeking from Union Pacific. What I'm really seeking is not tort liability. This is a safety violation, and the significant relief that's sought here is the enforcement of the labor code, the nine-hour safety rule. And California is interested in that. The federal government has a nine-hour. The statutes are virtually almost identically worded. I agree with you that there's no conflict preemption here at all, specifically. Well, we can get to that. In addition to Coleman B. Estes' very clear instructions that what's sought is important, not what's may be recovered, and if this court wishes to overrule Coleman B. Estes, of course, that's your prerogative, but Coleman B. Estes is clear that what's sought is important, not what's recovered. And California felt that imposing a $5,000 per violation fine on the railroad company versus a $1,000 fine on the individuals was enough to enforce the labor code and to conclude, well, that's just too much for an individual to pay. I wish I could do that if the highway patrol pulled me over for speeding. I'd say, you know, I'm kind of broke, so you've got to let me go. I don't know anything. That's not what this statute says. I don't know if these individuals have the ability to pay, but this isn't a tort violation. This is a safety violation, and it's a fine. It's not damages. It's a fine for violating California safety laws. And to say, well, that's not significant, I think, is an overreach, and it ignores the federalism that's at the basis of CAFA here. If it's a local... You're bringing a class action. Nothing would prevent the individuals from... You're bringing a class action on behalf of every potential employee of Union Pacific against these four. You're not bringing an action against the employees at this particular... On behalf of this... Who work at this particular railroad against the people who are allegedly responsible for the violation of California law. I'm afraid that's not correct, Justice Mormon. We're bringing a private attorney general act on behalf of the state of California, and 75% of these proceeds go to the state of California. And the reason that the private attorney general act exists is to encourage enforcement of the labor code through private attorney generals like Mr. Christmas. That's significant in and of itself, regardless of the financial calculations under BINCO. We don't give federal courts the authority to decide that California's interest in its own safety laws is insignificant. That's not the issue. You could bring an action against the individuals on behalf of those particular employees who were actually affected by the misconduct. That's not an issue here. What you want to do is bring a class action on behalf of every employee of Union Pacific in California. You didn't even limit it. That's incorrect again, Justice Corman. It's limited to RAP managers and... No, no, I mean, you didn't limit it to the plaintiffs. The plaintiffs are everybody who... Every employee... I'm sorry, every employee, yes, who was affected in the state of California, not in that particular rail yard. That's correct. And then you say there really aren't any other places. I'm not saying there really aren't any other places. I'm saying two things. One, we don't know how many other places have RAP managers or MIOs, and therefore the numerical analysis is X plus 2 equals an unknown number, and that's Union Pacific's burden to show, not ours. And the second thing is, that numerical analysis really shouldn't even apply because this is a safety violation and it's a fine for breaking the law. It's not tort damages, and that's what BINCO was about. This is different. This is the Private Attorney General Act, and California is seeking to enforce its own laws. And if we could then get into preemption, California is not prevented from seeking enforcement of its own laws because Congress said so. The Federal Railroad Administration also said there's no hours of safety regulation, and the only regulation that the district court found could apply here, Appendix A of Part 228, also says that there's no... I don't understand. I thought the original statute here, the hours and wages law, that was in effect forever, since Congress began, I suspect, regulating railroads, occupied the field. It was essentially field preemption, and that still exists today. No, Your Honor, it doesn't. What the Supreme Court implied, inferred was congressional intent when Queen Victoria was fighting Kaiser Wilhelm, is not the express intent of the Federal Railroad Safety Act of a later Congress. So ERIE, which was decided in World War I... What did the Supreme Court say, and I think it's a Coben case, that what was in effect up until 19... The preemption rules and statutes that were deemed to be preempted or where there was field preemption, continued, notwithstanding the 1976 law. No, that's not. What it said was the Federal Railroad Safety Act didn't change the preemptive effect of other laws, but the express preemption provision in the Federal Railroad Safety Act does apply to the laws in the Federal Railroad Safety Act. If it didn't, it's a nullity. The Marshall case concerned the Boiler Inspection Act. It has a different preemptive effect, and that wasn't changed by first... It was basically right, and Judge Kennedy wrote an opinion saying that it was... The preemption rules did not change in 1976 when they enacted a subsequent statute. I don't... It didn't change... As I read his opinion and the Supreme Court's opinion, it couldn't be clearer. I think it's very clear that the express intent of Congress in the Federal Railroad Safety Act was to allow states to enforce their own laws because that's what the express preemption clause says. It says it in the safety clause. That didn't exist when Erie was decided. It also doesn't exist in the Locomotive Inspection Act or the Boiler Inspection Act. Therefore, that express preemption clause doesn't apply to other laws, but it absolutely does apply to the Federal Railroad Safety Act. Otherwise, you're nullifying the express intent of Congress. Congress meant what it said. It wanted to encourage states to enforce their own laws, and we know this because it said so. It hadn't said so in 1914, but it did say so when the FERSA was passed, and FERSA doesn't change the preemptive effect of other laws, but it does certainly affect FERSA. Otherwise, it's a nullity. Therefore, there has to be a regulation here. If there's no regulation or order, there's no preemption. That's what Congress said, and to say that the Supreme Court can impliedly overrule the express intent of Congress creates a super legislature, and that's not what courts are decided to do. It's very clear throughout every case I've ever read that the express intent of Congress comes first, and if that's made clear, judicial inquiry is done. FERSA has an express preemption clause. Thank you. You're over your time now, so thank you. We'll give you some time for rebuttal. Thank you. Good morning. Donald Munroe for Union Pacific and Union Pacific Corporation. Could you move your microphone up a bit? Yes, sir. Thank you. This case presents a routine, run-of-the-mill application of basic principles under CAFTA. The core idea is that you cannot satisfy the local controversy exception by naming local employees who are merely responsible for applying or enforcing the corporate policies of an out-of-state company. Now, what the plaintiff is attempting to do here is to say, well, I can do that if I am sufficiently vague in my complaint about exactly what these individuals did, who they were responsible for. So, and that's the pattern he follows throughout his complaint. He says, for example, Mr. Davis is responsible for scheduling hours and days of work, but he never says the hours of who. Is it Mr. Christmas? Is it the individuals at this one rail yard? Is it all MIOs throughout the state? Is it all employees of Union Pacific? We don't know. Moreover, we have no idea, based on this complaint, what their relationship was to this policy. Are they responsible for it? Did they come up with it? Are they implementing something that was handed down from corporate headquarters in Omaha? Did they have discretion to change it? Are there other managers who have a role in this policy? None of this is laid out. So, at best, at best, his complaint is ambiguous about whether these are just minor role players enforcing the policies of an out-of-state company or whether they have some central role in this scheme. And he says, that's our problem. It's our burden. We didn't come up with evidence about how many facilities. Well, this Court has said repeatedly that is not correct. It is his burden with respect to this exception. If this complaint is sufficient to establish local controversy exception, there is no CAFA jurisdiction anymore because you can always name some local representative of an out-of-state company that does business in California, remain vague and ambiguous about what exactly their role was, and then just from there on, just talk about the defendants in the aggregate, which is what Mr. Christmas has done here. This is supposed to be a narrow exception. In his approach, the exception swallows the rule. Let me briefly address the two specific prongs of the local controversy exception, beginning with significant relief. He says in his reply that it's 44% of the total. And he gets that by aggregating the 11% that he calculates each individual would owe. Today, he put it in terms of 4,000 versus 5,000. There's two problems with that. Number one, he's aggregating the potential liability of the four individual defendants and then comparing it to only one of the two out-of-state company defendants. Now, I think it's highly debatable whether it's proper to aggregate the claims against the four individuals in the first place. I think the better approach under CAFA would be to focus on the individual liability of each one versus the out-of-state defendants. But the bigger problem is that he's only focusing on the PAGA claim. He's ignoring completely, in his comparison of significant relief, the... What is PONDA, by the way? So the PONDA claim, I'm sorry to interrupt you, but you said he was focusing on the PONDA claim. Say what it is and then go ahead. Sure. The PAGA claim is count three in his complaint. It's the only one where he's seeking money damages against both the companies and the individuals. The far more significant claim monetarily in his complaint is count one, which is the unfair business practice claim, which is made only against Union Pacific. Now, the unfair business practice claim is far more significant because that claim, under California law,  versus one year for CAFA. It has a $2,500 per violation penalty. And so if you assume 100 class members, as he alleges, and let's just pick 100 shifts per year, multiply it out, that's $100 million in liability just for Union Pacific. Use the same assumptions, the same number of class numbers, same number of shifts, and multiply out the PAGA claim, it would be $5 million for Union Pacific and $1 million for each of these individuals. So it's 105 million against one. It's less than 1%. So you don't even need to reach the question of whether these individuals are liable only to a subset of the class or to the class as a whole. Under any definition, less than 1% is not significant relief and it's a comparative analysis. This court has said that repeatedly. With respect to the significant basis question, we've emphasized the fact that his class definition is statewide. And he says, well, we've never talked about multiple facilities. You can't just assume that. Maybe it is just this one facility. The problem with that, Your Honors, is that it's his burden to clarify this. If his complaint is ambiguous, you can't just assume that everyone in the class is at this facility or that these managers have responsibility for everybody in the state. He has the right, under Benko, once we remove, to clarify his allegations. So he has a unique ability here to say, wait a minute, Union Pacific, you're wrong. I can't do that. Under Coleman, I can't come in with evidence to say, look, there's actually five intermodal terminals and there's only three people at this facility. And this idea that these four individuals have responsibility for the whole class is bunk. I can't do that. But he could and he didn't do it. Now, with respect to the preemption question, let me start with field preemption. And Judge Corman, your questions with respect to the Kearns decision by the Supreme Court is exactly where I'd like to go. Because there's no debate that the Supreme Court said in 1914, which, by the way, wasn't that long ago in railroad law terms, that the Hours of Service Act has field preemptive effect. His argument is that was changed in 1970 by the passage of the Federal Railroad Safety Act. And when we say Kearns, he says, oh, no, no. That's the Locomotive Inspection Act. That's outside the FRSA. And because the Hours of Service Act is in the FRSA, different analysis. Well, Mr. Christmas has apparently not read the legislative history here. Because when these three acts, the Federal Railroad Safety  Act, were recodified in 1994, they were all combined into Subtitle 5, Part A of Title 49. There's no distinction between the Locomotive Inspection Act and the Hours of Service Act. They're both part of the FRSA. The original piece of the FRSA that includes the preemption clause became Chapter 201, the Locomotive Inspection Act is Chapter 207, and the Hours of Service Act is Chapter 211. So the Kearns analysis, which says that preexisting laws retain their preemptive effect, is exactly on all fours with this case. There is no distinction at all. Moreover, his position just doesn't make any sense. He's saying that there's field preemption for many, many years, decades. And then Congress passes this law that says we want uniformity of laws regarding railroad safety, but silently overrules Erie and says there's only going to be preemption if the Secretary passes a regulation that duplicates, in all respects, the statute that's already on the books. It's just not a rational conception of law. Now, if you don't buy that, if you for some reason thought there wasn't field preemption, the alternative basis is the FRSA itself. And the issue there is whether you need a regulation or whether a statute might be good enough. We point to A1 of the FRSA, which is the provision that talks about laws shall be uniform. Well, he doesn't like that. He skips over that. He goes directly to A2, which is the Savings Clause. And he says you need to have a regulation because it only talks about regulations. Well, the reason it talks about regulations is because it's addressed to the question of interstitial rulemaking by the Secretary. How do we know that? Well, again, in 1970, when the FRSA was passed, there were only two relevant provisions. There was the new power of the Secretary to engage in interstitial rulemaking. That was Section 431A. And there was the preemption language. So it had to be addressed to interstitial rulemaking. There wasn't anything else for Congress to be talking about. And Marshall, by this court, and Kearns, by the Supreme Court, both make this very clear. Now, assume that's wrong and we need a regulation to win. Well, we've pointed to this list of regulations and orders, including Appendix A, the CFR, the compliance manuals, the technical bulletins by FRA. And his response is essentially, oh, well, with respect to Appendix A, that's just a rule. It's not a regulation. And he points to the definition in the Administrative Procedures Act. And he says, Congress eliminated the word rule and the word standard from the FRSA when it recodified it in 1994. Well, again, Mr. Christmas has not read the legislative history, because if you look at the historical and statutory notes to the USCA, when this law was recodified, it says expressly that rule and standard were eliminated because they are synonymous with regulation and were therefore superfluous. It's the same thing. So if this is a rule, Appendix A is a rule, well, that's good enough. The Secretary has acted in this area. There's plenty of authority at the federal level with respect to hours of service. Can I ask you to go back for a minute? You were talking about his burdens in terms of pleading. Where does that come from? Well, the courts are all in agreement on this. I'd refer you to this court's decision in Benko, as well as this court's decision in Coleman, both of which state that it is the defendant's burden to articulate in the first place the predicate for removal. But once that is done, the burden shifts to the plaintiffs to establish the predicate for the exception. And that's true whether you're talking about the local controversy exception or any of the other exceptions to CAFA jurisdiction. I don't recall the details of the reasoning of those courts, but it is true. This court agrees with every circuit in the country on that point. There's no disagreement as to whose burden it is to establish the basis for the exception, unless there are any further questions. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. May it please the court, the Locomotive Inspection Act has a different preemptive effect than the Federal Railroad Safety Act. Federal Railroad Safety Act applies to issues of railroad safety. The Locomotive Inspection Act does not. And that's in the statute. And the Supreme Court said that they have different preemptive effects. So the first, it doesn't change the preemptive effect of laws that aren't railroad safety laws. But it absolutely does affect railroad safety laws. And as the district court correctly found here, we're talking about a railroad safety law here. Therefore, the express preemption clause applies. The argument that the preemption clause doesn't apply to pre-existing laws means that that entire clause is a nullity, because the act itself only gives the Secretary authority to regulate on laws that were in existence the day PERSA was passed. And therefore, if it doesn't apply to laws that existed when PERSA was passed, and also doesn't give the Secretary authority to issue any regulations afterwards, then that express provision clause doesn't apply to anything. And that can't make sense. The only way to interpret it is the common sense plain language definition, which is federal railroad safety laws don't lead to preemption, only regulations and orders. And that's what Congress said. And that's what Congress meant. And that very same express preemption clause, it says it uses the term laws in a different section. But when it comes to the safety clause, it doesn't. Congress didn't do that by mistake. And this court shouldn't conclude that Congress did that by mistake. If pre-existing laws led to preemption, Congress would have said so. They expressly didn't. The next thing is, as far as the burden of proving the numerical analysis, again, a defendant hasn't addressed the issue of the relief sought here isn't money. It's enforcement of the labor code. And the money is a fine. It's not a tort. So you're interested in it as an injunction? Pardon me? Or you're interested in it as an injunction and not money? Well, they've already laid off all the employees. So there's no need to have an injunction anymore. But in the meantime, the- But we don't know. You're suing them for unbehaving of every employee in the state. Well, we know they laid off Mr. Christmas and everybody at the yard where he works. I don't know if there are any other employees. And as far as placing the burden on the plaintiff, that's not correct. We don't have access to their records. They know what other yards they have. They know what other employees are ARMs and MIOs. They provided no data. But the basic fact is, are you interested in money? No, I'm interested in the enforcement of the Private Attorney General Act. And these are fines. It's a private attorney general action. And to conclude that we're interested in money concludes that capitalism isn't the basis of our system. The purpose of the Private Attorney General Act was to encourage attorneys like me and clients like Mr. Christmas to enforce the Private Attorney General Act. And I don't deny that at all. And I'm proud of it. No, but I mean, you can call it what you will. But in the end, you want money. No, in the end, I want the nine-hour safety law not to be ignored. Well, then you could accomplish more. I'm really concerned about safety violations. And if this court wants to get into my head over what we're really seeking, we're seeking the enforcement of the safety laws, not money. Money is a fine for wrongdoing. It's not a tort. And how much do you get from the money that you collect? Everything I'm entitled to under the law, Your Honor. And what does that have? Suppose you collect $5 million. How much do you get? And how much does the state of California get? The state of California gets 75% of it, Your Honor. I'm not ashamed of that. That's what the law says. I'm not saying you should be ashamed of it. I'm asking a question. I'm pretty sure that the defense counsel isn't here out of the goodness of his heart. He's paid. I think it's entirely fair that I could be paid, too. But that's not what this case is about. This case is about a corporation that ignored a nine-hour safety law just because it felt it wouldn't be enforced. Thank you, counsel. Thank you. The case to start will be submitted for decision.
judges: Reinhardt, Thomas, Korman